Filed 1/31/14  P. v. Sheridan CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

THE PEOPLE,

      Plaintiff and Respondent,

v.

KRISTOPHER DOMINIQUE
SHERIDAN,

      Defendant and Appellant.

E058584

(Super.Ct.No. FSB1205375)

OPINION

APPEAL from the Superior Court of San Bernardino County.  R. Glenn Yabuno and William Jefferson Powell, IV, Judges.  Affirmed.

James R. Bostwick, Jr., under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Respondent.

A jury convicted defendant Kristopher Dominque Sheridan of robbery (count 1 –

1

Pen. Code, § 211)[1] and possession of a firearm by a felon (count 4 – § 29800, subd. (a)).[2] The jury additionally found true allegations defendant was personally armed with a handgun in his commission of the count 1 offense (§ 12022.53, subd. (b)) and had suffered two prior prison terms (§ 667.5, subd. (b)). The court sentenced defendant to an aggregate, determinate term of 17 years' imprisonment consisting of the following: the upper term of five years on the count 1 offense, a consecutive 10 years on the personal-use enhancement, and consecutive one year terms on each of the two prior prison terms.

After defendant's trial counsel filed the notice of appeal, this court appointed counsel to represent defendant. Counsel has filed a brief under the authority of *People v. Wende* (1979) 25 Cal.3d 436 and *Anders v. California* (1967) 386 U.S. 738 [87 S.Ct. 1396, 18 L.Ed.2d 493], setting forth a statement of the case, a brief statement of the facts, and identifying six potentially arguable issues: 1) whether the trial court violated defendant's due process right to a fair trial in requiring the defendant to be shackled during the first day of trial; 2) whether the prosecution committed prejudicial, burden-shifting misconduct by arguing there was no evidence defendant was shot in the back; 3) whether the court prejudicially erred by overruling defendant's objection to the People's ostensible misconduct; 4) whether the court abused its discretion by imposing the upper term on count 1; 5) whether substantial evidence supported the jury's true finding

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

[2] The jury acquitted defendant of the count 3 charge of assault with a firearm upon a peace officer (§ 245, subd. (d)(1)). The jury deadlocked on the count 2 charge of robbery (§ 211); the court dismissed the charge upon the People's motion.

defendant had served two, separate prior prison terms for which he failed to remain free from custody for five years; and 6) whether the court erred in finding a vehicle was used in the commission of defendant's offenses and, thereby, revoking his driver's license. We affirm.

FACTUAL AND PROCEDURAL HISTORY

On December 4, 2012, Ana Godinez was working as the cashier at Pronto Pizza in the City of San Bernardino. Defendant, wearing a sweater with a hood, sunglasses, and a bandana, jumped over the counter; walked over to her; grabbed her shoulder; pulled her toward the cash registers while guiding her with a black, semiautomatic handgun; told her to open the register; and pointed the gun at her. She opened the register and helped defendant remove its contents, which she placed in a brown plastic bag defendant gave her. Defendant then told her to open another register; Godinez informed him there was no money in the other register; defendant ran off.

Jennifer Sanchez, who was in the back making pizzas, witnessed the robbery. She was less than five feet from defendant during the robbery. Soledad Sandoval, who was also working in the back, likewise witnessed the robbery. Sandoval went inside the office to look for the alarm, but could not find it.

Gerardo Pena Chavez, the store manager, also observed the robbery. Chavez pressed the panic button, ran outside, and called the police. While Chavez was on the

3

phone, he saw a police officer on the street corner and ran to inform him of the robbery.[3]

James Beach, a patrol sergeant with the San Bernardino Police Department, was on patrol that evening with his partner, reserve officer Mike Eby. Eby told Beach they were being flagged down. Two women pointed at the fleeing man. Beach and Eby noticed a man, whom they later identified as defendant, wearing dark clothing with a hoodie running away from Pronto Pizza with a gun in his hand. Beach chased after defendant in his vehicle; he pulled alongside defendant as defendant ran. Beach pointed his gun at defendant and yelled repeatedly through the open window of the patrol vehicle for defendant to drop the gun.

Eventually, Beach cut off defendant with his patrol vehicle; defendant started to jump over a rod iron fence. While going over the fence, the black, semiautomatic pistol held by defendant was pointed towards Beach; Beach thought defendant was going to shoot him. Beach fired his gun at defendant six times. Defendant fell over the side of the fence; a bag dropped out of his waist.

Eby exited his vehicle and kicked defendant's gun away from defendant's hands. Beach exited the patrol vehicle and assisted other officers who arrived on the scene to arrest defendant.

San Bernardino Police Officer Joshua Cogswell, who assisted in the arrest of defendant, followed the ambulance which took defendant to the hospital. At the hospital,

---

[3] During trial, the People played a recording of the 911 call to the jury. During the extremely brief exchange with the 911 operator, Chavez noted "I think that the cops already got [him] . . . ."

he observed two gunshot wounds to defendant's left hand and bandaged injuries to defendant's thigh. To Cogswell's knowledge, defendant sustained no injuries to his back.

San Bernardino Police Detective Brian Leis was assigned to assist in the investigation of the robbery. He executed a search of a vehicle found at the scene. Inside the vehicle he found a Metro PCS phone contract in defendant's name. Soledad testified more than $700 in cash was missing from the register. She could not reconcile the credit card purchases made on the register.

Detective Marco Granado of the San Bernardino Police Department was called in to assist with the investigation of the officer-involved shooting. At the scene, he found six spent nine-millimeter shell casings which were fired from Sergeant Beach's weapon. Granado located a Bersa, .380-caliber semiautomatic firearm which had six rounds in the magazine, but no chambered round. A bag containing $719.25 in cash and credit card receipts from Pronto Pizza was also found. A black hooded sweatshirt, black sunglasses, and gloves were additionally discovered.[4]

Pronto Pizza had 13 to 14 surveillance cameras covering both the inside and outside of the building. During trial, the prosecutor played video of at least eight separate camera angles from the surveillance to the jury, showing both the robbery and defendant's flight from the building.

---

[4] Granado testified there was another vehicle on the scene with a person located therein. He did not speak with the individual.

On March 4, 2013, Paul Larson, a deputy sheriff with the San Bernardino Sheriff's Department, rolled eight of defendant's fingerprints on a card.[5] On March 5, 2013, Cathi Ringstad, a fingerprint examiner for the San Bernardino Sheriff's Department, compared the fingerprints on the card rolled by Larson with those contained in two section 969(b) packets; the prints matched. Supervising San Bernardino Deputy District Attorney Michael Dowd testified that, as reflected in one section 969(b) packet, defendant had been convicted on April 30, 2004, of bringing or sending contraband onto the grounds of a Youth Authority Institution (Welf. & Inst. Code, § 1001.5). The court sentenced defendant to prison for 16 months. Defendant was released on parole on August 17, 2005.[6]

San Bernardino Deputy District Attorney Jason Anderson testified he prosecuted a case in which defendant was convicted in July 2011, of felony possession of a firearm by a drug addict previously convicted of a felony (former § 12021, subd. (a)(1)), for which he had been sentenced to three years' incarceration. Dowd also testified another section 969(b) packet reflected defendant had been convicted of felony possession of a firearm by a drug addict previously convicted of a felony (former § 12021, subd. (a)(1)) on July

---

[5] He was unable to print two of defendant's fingers due a cast worn by defendant.

[6] The Department of Corrections' history for defendant's imprisonment for the offense reflects defendant subsequently violated parole and was returned to prison on September 15, 2008. He was then paroled once again on May 26, 2009.

19, 2011, and was sentenced to three years' incarceration on July 20, 2011.[7] He testified defendant was discharged on parole on June 12, 2012.

Prior to voir dire, the court stated it had been informed defendant had refused to dress for trial. Defendant refused to respond to questions from the court regarding defendant's disinclination to dress for trial. The court noted, "It's also my understanding . . . that [defendant] has elected not to have his waist chains and ankle shackles removed. He asked that the deputy not remove them." The court stated "he is welcome to change into his clothes should he make that decision. Otherwise, we will proceed to trial with him in the orange jumpsuit provided by the county. If at any time he elects to change his mind we can allow him to make that change, but that will be on a daily basis. [¶] I would admonish the jury that the fact that [defendant] is in custody is not to be considered by them for any purpose."

The court gave defendant an opportunity to leave and discuss changing clothing with his counsel; defendant returned still in his orange jail jumpsuit. Defendant again refused to respond to queries from the court regarding his dress.

The court asked defendant, "you've also indicated to the bailiff that you did not want your waist chains removed. Would you like those waist chains removed, sir?" Defendant offered no response. The court then noted, "At the request of [defense counsel] the handcuff on [defendant's] right hand was removed to allow him to take notes. [Defendant], should you elect to change your mind regarding changing into street

---

[7] The abstract of judgment reflects the offense was committed in 2010.

clothes or having the waist chain removed, just advise the court, and we can make appropriate accommodations at the appropriate time. Because it's your choice to remain in jail clothing and to have the waist chain left on you, I do need to advise you that I will be admonishing or advising the jury that the decision[s] to remain in jail clothing and to have your waist chains on are yours and yours alone. And you were given an opportunity to change into other clothing and to have the waist chains removed, and that you declined to do so. [¶] Do you understand that, sir?" Defendant refused to respond. Jury selection commenced.

The next day the court observed defendant was still wearing his orange jumpsuit. Defense counsel informed the court he had discussed the matter with defendant, but defendant did not wish the contents of the conversation divulged due to attorney-client privilege. The court asked defendant if he would like his chains removed. The court received no response from defendant.

On the next trial date, the court asked if defendant would like to change clothes and have his shackles removed. Defendant, again, refused to respond. The People began their case-in-chief. Subsequent to the afternoon recess, the court noted, "Record will reflect that during the noon recess [defendant] requested to be dressed out. He is now dressed in street clothes and does have his shackles removed."

Posttrial, the court instructed the jury with CALCRIM No. 204, reading, "The fact that physical restraints have been placed on the defendant is not evidence. Do not speculate about the reason. You must completely disregard this circumstance in deciding

8

the issues in this case. Do not consider it for any purpose or discuss it during your deliberations."

In his closing argument, defense counsel stated "Sergeant Beach in the middle of the night on December 4[], shot the wrong man. He shot [defendant]. He [s]hot him from behind." "[T]he truth lies entirely in the small details . . . not through statements of a man who shot another man from behind."

In his rebuttal, the prosecutor stated defense counsel "told you in his opening, and he told you the defendant was shot in the back, really. Did anybody testify the defendant was shot in the back?"**[8]** Defense counsel objected that the prosecutor was misstating the defense argument. The court overruled the objection.

The prosecutor continued, "You can go through all the evidence, all the transcripts, did anyone testify that the defendant was shot in the back? They didn't. No one testified to that. [¶] Now, it's true, I have the burden. I have to prove the case beyond a reasonable doubt. But when the defense puts on a defense, which they did by calling Officer Cogswell to testify to those injuries, you can judge the nature and quality of that defense in determining whether or not I have met my burden; okay. [¶] If the defendant was shot in the back, don't you think that the doctor who treated him would have been here to tell you about that?"

Defense counsel objected that the prosecutor was attempting to shift the burden of proof. The court overruled the objection. The prosecutor continued, "The fact of the

---

**[8]** Defense counsel's opening statement is not a part of the record on appeal.

9

matter is he wasn't shot in the back. You don't know anything about the position of his body when he was shot."

During the sentencing hearing the court found "a motor vehicle was involved in this crime as much as it appeared to be driven to the location and was ready to be driven away from the location by this defendant or by his accomplice." The court sentenced defendant to the upper term on count 1, finding two aggravating factors and no mitigating factors. The court noted defendant had acted in concert with another person in committing the robbery and had acted dangerously by running in public with a gun which resulted in a public shooting.

DISCUSSION

We offered defendant an opportunity to file a personal supplemental brief, but he has not done so. Pursuant to the mandate of *People v. Kelly* (2006) 40 Cal.4th 106, we have independently reviewed the record for potential error and find no arguable issues. (*People v. Seaton* (2001) 26 Cal.4th 598, 652 [in choosing a restraint, a defendant cannot complain of prejudice from the jury's observation of the chosen restraint]; *People v. Wash* (1993) 6 Cal.4th 215, 262-263 [prosecutor's comment upon defendant's failure to adduce material evidence or call logical witnesses not improper]; *People v. Black* (2007) 41 Cal.4th 799, 813 [one legally sufficient aggravating factor justifies imposition of the upper term]; *People v. Crockett* (1990) 222 Cal.App.3d 258, 263 [court documents, and reasonable inferences made therefrom, may provide substantial evidence a defendant suffered a prior prison term and failed to remain free from custody for five years.]; See *People v. Burch* (2007) 148 Cal.App.4th 862, 868 [section 969(b) packet properly

10

admitted to prove prior prison term allegation]; *People v. Gimenez* (1995) 36 Cal.App.4th

1233, 1237 [use of vehicle to arrive at scene of offense and intent to flee therein,

sufficient to support finding that a vehicle was used in the commission of the crime].)

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON
J.

We concur:

RAMIREZ
P. J.

HOLLENHORST
J.