[No. E005974. Fourth Dist., Div. Two. Oct. 3, 1989.]

THE PEOPLE, Plaintiff and Respondent, v.
MARILU S. PAULSEN, Defendant and Appellant.

COUNSEL

Richard V. Myers, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, Harley D. Mayfield, Assistant Attorney General, and Steven H. Zeigen, Deputy Attorney General, for Plaintiff and Respondent.

OPINION

CAMPBELL, P. J.—

### FACTUAL AND PROCEDURAL HISTORY

This case arises from an elaborate scheme in which defendant and a codefendant defrauded or attempted to defraud a number of merchants through payment for goods with stolen, altered cashier's checks, using false identification. Defendant was charged with numerous offenses including three counts of conspiracy to commit the crime of grand theft (Pen. Code, § 182, subd. (1)). Pursuant to a plea bargain, she was permitted to plead guilty to one count of conspiracy, pronouncement of judgment was withheld, and she was placed on probation for three years.

As part of her plea agreement, defendant waived her rights regarding dismissed counts "to the extent that the Court may consider such dismissed

counts in deciding whether or not to grant probation and in deciding whether or not to impose a midterm, aggravated or mitigated prison term." At the sentencing hearing, defendant contended that she should not be subjected to proposed probation term number 12, surrender of her driver's license to the court pursuant to Vehicle Code section 13350.[1] She argued that a vehicle was not used in the crimes and that she needed her driver's license in order to find employment while on probation. The trial court made the requisite finding under section 13350 and ordered defendant to surrender her driver's license as a condition of her probation.

## DISCUSSION

■ Defendant's sole contention on appeal is that the trial court erred in ordering her driver's license revoked because a motor vehicle was not "used" in the crimes as required by section 13350. She argues that, though an Isuzu car and a U-Haul truck were used to transport and store stolen merchandise during the perpetration of the fraud scheme, this incidental involvement of motor vehicles did not amount to "use" under section 13350.

Section 13350 provides that the Department of Motor Vehicles must revoke the driving privilege of any person who has been convicted of "[a]ny felony in the commission of which a motor vehicle is used, . . ." In a very recent case, *People* v. *Poindexter* (1989) 210 Cal.App.3d 803 [258 Cal.Rptr. 680], this court was called upon to interpret this language: "Neither party has cited any authority, and our research has revealed none, concerning the interpretation of the phrase 'Any felony in the commission of which a motor vehicle is *used*' (italics added) in Vehicle Code section 13350, subdivision (2). In construing the weapon use provision of Penal Code section 12022.5, the California Supreme Court has defined 'use' as follows: ' "Use" means, among other things, "to carry out a purpose or action by means of," to "make instrumental to an end or process," and to "apply to advantage." [Citation.]' (*People* v. *Chambers* (1972) 7 Cal.3d 666, 672 [102 Cal.Rptr. 776, 498 P.2d 1024].) Applying this definition, courts have held that mere possession of a firearm during the commission of a felony does not constitute a 'use' within the meaning of the statute. [Citations.]

"Likewise, in the context of Vehicle Code section 13350, the Legislature must have intended the term 'used' in the commission of a felony to mean that there was a nexus between the offense and the vehicle, not merely that a vehicle was incidental to the crime." (*People* v. *Poindexter, supra,* 210 Cal.App.3d at pp. 807-808.)

---

[1] All further statutory references are to the Vehicle Code unless otherwise indicated.

In *Poindexter,* defendant and an accomplice were in a car when they saw another vehicle stalled at the side of the road. (210 Cal.App.3d at p. 806.) They exited their car, stole a car "bra" from the person having car trouble, got in their car and drove away. (*Id.* at pp. 806-807.) This court held that there was no "nexus" between the car defendant was driving and the crime committed—that the "crime was not carried out by means of the car, nor was the car used as an instrumentality in the crime." (*Id.* at p. 808.)

We are confronted with far different circumstances in this case. The preliminary hearing transcript reveals that defendant rented the U-Haul truck in order to transport and store stolen merchandise. Defendant's accomplice in turn used the truck to haul television and stereo equipment purchased with a fraudulent cashier's check away from the store where the merchandise was purchased. The record shows that store personnel helped him load it on the truck and that it was necessary to use the truck's ramp to load a 35-inch picture tube weighing 365 pounds. Defendant and her codefendant had the truck parked at their motel ready to accept another load of stolen merchandise from another stereo equipment dealer, who had brought the components of a $12,000 sound system to the motel pursuant to their merchandise order, when they were apprehended. Defendant and her codefendant used the Isuzu car to haul a large musical instrument weighing about 50 pounds away from a music store after fraudulent purchase of the instrument. Finally, the overt act charged in one of the conspiracy counts which was dismissed pursuant to defendant's plea bargain was her codefendant's loading of the stolen merchandise onto the U-Haul truck in order to carry it away from the store where it was purchased.

It is clear from the foregoing that there was a strong nexus between the crimes perpetrated by defendant and the two motor vehicles in this case. Both the Isuzu car and the U-Haul truck were instrumental in carrying out the crimes charged. Their use was necessary in order to haul away the merchandise acquired in the fraudulent purchases. Defendant and her codefendant would not have been able to move the heavy musical and television equipment away from the stores where they obtained the merchandise without the use of such vehicles. Moreover, it appears that the use of these vehicles was a deliberate part of the two coconspirators' elaborate fraud scheme. We hold that the trial court did not err in ordering defendant to surrender her driver's license pursuant to section 13350.

## DISPOSITION

The judgment is affirmed.

McDaniel, J., and Hollenhorst, J., concurred.