[No. D018770. Fourth Dist., Div. One. Feb. 1, 1994.]

In re GASPAR D., a Person Coming Under the Juvenile Law Court.
THE PEOPLE, Plaintiff and Respondent, v.
GASPAR D., Defendant and Appellant.

## COUNSEL

Marcia O. Likins, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Garrett Beaumont and M. Eugenia Lopez, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**TODD, J.**—The juvenile court entered a true finding Gaspar D. burglarized a vehicle (Pen. Code, § 459), declared him a ward, and placed him with his parents. Gaspar contends the court improperly suspended his driver's license (Veh. Code,[1] § 13350) as a condition of probation. We affirm.

### FACTS

About 2 a.m. on May 8, 1992, Erin Edwards heard a car outside her home. A blue car with a white top was parked across her driveway. A man was sitting in it. In the driveway was the car Erin's sister Anita used. Gaspar was sitting in that car.

Erin woke her mother, Opal Powell, and called the police. When Powell opened the garage door, Gaspar ran and entered the blue and white car, sitting in the front passenger seat. The car left. Before the police arrived, it drove by the house at least twice. One time, Gaspar and his companion alighted and ran around.

When San Diego Police Officer Stephen Connolly arrived at the scene, he found broken window glass in the driveway. The stereo had been removed from Anita's car.

---

[1] All statutory references are to the Vehicle Code unless otherwise specified.

About a quarter mile away, Connolly pulled over a car meeting Erin and Powell's description. Gaspar was the passenger. In the car was a cassette tape belonging to Anita. On the passenger's side floorboard were a crow bar, two pairs of pliers, and two screwdrivers. In the trunk was the stolen car stereo. Connolly took Erin to the scene of the stop. As they turned the corner, she noticed another car had been broken into. She identified Gaspar as the person she had seen take the stereo, run, and enter the blue and white car.

## DISCUSSION

Gaspar contends the court improperly suspended his driver's license under section 13350 because the evidence failed to show a nexus between the offense and the use of a vehicle.

Section 13350, subdivision (a)(2) provides in pertinent part:

"(a) The [Department of Motor Vehicles] immediately shall revoke the privilege of any person to drive a motor vehicle upon receipt of a duly certified abstract of the record of any court showing that the person has been convicted of any of the following crimes or offenses:

". . . . . . . . . . . . . . . . . . . . . . . . . . .

"(2) Any felony in the commission of which a motor vehicle is used, except as provided in Section 13351, 13352 or 13357."

Section 13351 provides for license revocation for convictions of vehicular manslaughter, hit and run, and reckless driving. Section 13352 governs license suspension and revocation upon conviction for speed contests or driving under the influence of alcohol or drugs. Section 13357 provides that upon court recommendation, the Department of Motor Vehicles shall suspend or revoke the driving privilege of any person found guilty under section 10851 (unlawful driving or taking of a vehicle).

In the court below, defense counsel objected to the probation officer's suggestion the court recommend Gaspar's driving privilege be revoked for one year pursuant to section 13350, subdivision (a)(2). Counsel argued Gaspar did not use the car to commit the offense.

Gaspar urges us to follow *People v. Poindexter* (1989) 210 Cal.App.3d 803 [258 Cal.Rptr. 680]. There, Anderson's car was stopped along the highway. Merritt stopped his car behind Anderson's. Merritt and his passenger, Poindexter, alighted. After a short conversation, Merritt claimed the

"bra" on Anderson's car was his. He and Poindexter removed it from Anderson's car, accused him of ripping it, and demanded money to repair it. Merritt put it on his own car. He and Poindexter threatened Anderson. Merritt asked Anderson to open the trunk of his car. (*Id.* at p. 806.) Anderson said it would not open. Merritt took Anderson's keys and unsuccessfully attempted to open it. (*Id.* at pp. 806-807.) He ordered Anderson to take out the speakers from the front of the car. They were destroyed in the removal process, so Merritt gave them back. He and Poindexter left the scene in their car. (*Id.* at p. 807.) Poindexter pleaded nolo contendere to grand theft person (Pen. Code, § 487, subd. 2). (210 Cal.App.3d at pp. 805-806.) The trial court ordered the Department of Motor Vehicles to suspend Poindexter's driver's license for one year pursuant to section 13350. (210 Cal.App.3d at p. 807.) In reversing, the reviewing court analogized the situation to cases defining weapon use under Penal Code section 12022.5. (210 Cal.App.3d at pp. 807-808.) The court then stated: "[I]n the context of . . . section 13350, the Legislature must have intended the term 'used' in the commission of a felony to mean that there was a nexus between the offense and the vehicle, not merely that a vehicle was incidental to the crime. Under this standard, the record does not show a sufficient connection between the vehicle and the crime to invoke . . . section 13350. The crime was not carried out by means of the car, nor was the car used as an instrumentality in the crime." (*Id.* at p. 808.)[2]

In *People* v. *Paulsen* (1989) 217 Cal.App.3d 1420 [267 Cal.Rptr. 122], the court reached a contrary conclusion. There, Paulsen and a codefendant swindled merchants by paying for goods with stolen, altered cashier's checks and using false identification. They used an automobile to haul a large 50-pound musical instrument from a music store after one purchase. The codefendant used a rented U-Haul truck to transport television and stereo equipment from the store where it was bought. Store personnel helped him load it on the truck. It was necessary to use the truck's ramp to load a 35-inch picture tube weighing 365 pounds. When Paulsen and the codefendant were apprehended, they had the truck parked at their motel ready to accept a load of stolen merchandise from a dealer who had brought a stereo system to the motel pursuant to their purchase order. (*Id.* at pp. 1422-1423.) Paulsen pleaded guilty to one count of conspiracy to commit grand theft (Pen. Code, § 182, subd. (1)). (217 Cal.App.3d at p. 1421.) As a condition of probation, the court ordered her to surrender her driver's license under section 13350. Paulsen challenged this order on the ground there was no

---

[2]Gaspar also cites *People* v. *Monday* (1990) 224 Cal.App.3d 1489 [274 Cal.Rptr. 617]. In that case, the court construed section 13202 which provides for license suspension or revocation where "the motor vehicle was involved in, or incidental to, the commission of" drug offenses.

vehicle use. (217 Cal.App.3d at p. 1422.) The reviewing court rejected this contention, stating: "It is clear from the foregoing that there was a strong nexus between the crimes perpetrated by defendant and the two motor vehicles in this case. Both the Isuzu car and the U-Haul truck were instrumental in carrying out the crimes charged. Their use was necessary in order to haul away the merchandise acquired in the fraudulent purchases. Defendant and her codefendant would not have been able to move the heavy musical and television equipment away from the stores where they obtained the merchandise without the use of such vehicles. Moreover, it appears that the use of these vehicles was a deliberate part of the two coconspirators' elaborate fraud scheme." (*Id.* at p. 1423.)

In *Langfield* v. *Dept. of Public Safety* (1990 Minn.Ct.App.) 449 N.W.2d 738, a case factually similar to the instant one, the court considered whether a license was properly suspended under a statute similar to section 13350. The court affirmed, concluding: "[E]ven if appellant was not the driver, the vehicle was used to travel to the burglary scene, was used as a place from which to commit the crime, and was used to depart the scene after the attempted burglary." (449 N.W.2d at p. 741; see also *Com., Dept. of Transp., Bu. of Traffic Safety* v. *Hull* (1980) 52 Pa.Commw. 334 [416 A.2d 581], and cases cited therein.)

We agree with the reasoning of *Paulsen, Langfield,* and *Hull* on these facts. We also agree with their conclusion that one purpose of the suspension legislation is to deter the use of motor vehicles in criminal endeavors. The legislation's purpose is not limited to concerns for the safety of the driving public.

The court did not err in finding Gaspar used a vehicle in the commission of a felony and recommending his driving privilege be revoked. Aside from the use of the vehicle for transportation to and away from the chosen crime scene, there was use of the vehicle to conceal the fruits of the crime in the trunk. A sufficiently strong nexus between the vehicle use and the crime existed to apply section 13350.

## DISPOSITION

The order is affirmed.

Work, Acting P. J., and Benke, J., concurred.

Appellant's petition for review by the Supreme Court was denied May 12, 1994.