[No. E013895. Fourth Dist., Div. Two. June 26, 1995.]

THE PEOPLE, Plaintiff and Respondent, v.
LOUIS GIMENEZ, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

*\*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for partial publication with the exception of the section entitled, "The Fourth Amendment Waiver Was a Proper Condiditon of Probation."*

**COUNSEL**

Donna L. Groman, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Garrett Beaumont and Esteban Hernandez, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**RAMIREZ, P. J.**—Pursuant to a plea agreement, defendant pleaded guilty to second degree vehicle burglary. Defendant was granted supervised probation for three years with one hundred eighty days to be served in the county jail. The court imposed certain conditions on defendant's probation including the condition that defendant submit to warrantless searches. The court also made a finding that a motor vehicle was used in the commission of the crime and ordered the Department of Motor Vehicles (DMV) to revoke defendant's driving privilege for one year pursuant to Vehicle Code section 13350.

### FACTS

Approximately 12:30 a.m., a San Bernardino County sheriff's deputy was driving past a car lot when he saw defendant getting out of a red Camaro. The deputy made a U-turn but when he arrived at the scene defendant had left. Shortly thereafter, defendant was located in a parking lot adjacent to the car lot. A check of the red Camaro revealed that its radio had been removed and placed on its front seat. Tools used to remove the radio were found in defendant's truck. Defendant admitted to the theft during a taped interview.

### DISCUSSION

On appeal, defendant argues that the trial court erred in (1) ordering his driving privilege be revoked, and (2) ordering a warrantless search condition as one of his probation conditions.

#### Revocation of Defendant's Driving Privilege Valid

Defendant contends that there was insufficient "use" of a motor vehicle in the commission of a crime to justify the trial court's revocation of his driver's license. We disagree.

Defendant cites *People* v. *Paulsen* (1989) 217 Cal.App.3d 1420 [267 Cal.Rptr. 122] and *People* v. *Poindexter* (1989) 210 Cal.App.3d 803 [258 Cal.Rptr. 680], two cases in which this court rendered decisions involving two factually different scenarios and, of course, two different holdings.

In *Paulsen*, the defendants were involved in an elaborate scheme to defraud merchants and used an automobile and a U-Haul to transport and store stolen merchandise. We held that the motor vehicles were "instrumental in carrying out the crimes charged" and were "necessary in order to haul away the merchandise acquired in the fraudulent purchases." (*People* v. *Paulsen, supra*, 217 Cal.App.3d at p. 1423.) We agree that defendant does not fall within the confines of our holding in *Paulsen*. We disagree, however, with defendant's contention that he falls within the factual framework of our holding in *Poindexter*.

In *Poindexter*, defendant and an accomplice happened upon a car parked at the side of the road. They pulled up behind the car and, by intimidating the victim, they removed a "bra" that was on the front of the victim's car and put it on their own car. Upon entry of a plea of nolo contendere to grand theft person, the trial court ordered DMV to suspend defendant's driver's license pursuant to Vehicle Code section 13350. On appeal, we struck the finding that an automobile was involved in the offense and the order to suspend defendant's driver's license. We held that the Legislature must have intended the term "used" in the commission of a felony to mean that there was a nexus between the offense and the vehicle, not merely that a vehicle was incidental to the crime. Under the facts of *Poindexter* the crime was not carried out by means of the car, nor was the car used as an instrumentality in the crime. (*People* v. *Poindexter, supra*, 210 Cal.App.3d at p. 808.)

The facts we are currently faced with fall between the clear "use" of a vehicle in the commission of a felony as set out in *Paulsen* and the equally clear non-"use" of a vehicle depicted in *Poindexter*. Indeed, these facts are more closely aligned with the facts of *In re Gaspar D.* (1994) 22 Cal.App.4th 166 [27 Cal.Rptr.2d 152]. In *Gaspar D.*, defendant, a minor, was spotted sitting in the victim's car, parked in her driveway. Parked across the driveway was a blue and white car with defendant's accomplice behind the wheel. Defendant, after realizing he had been spotted, ran to the front passenger seat of the blue and white car. The car left. The police found broken window glass in the driveway and discovered that the stereo had been removed from the victim's car. The officer pulled over a car meeting the description of the blue and white car about a quarter of a mile from the

scene. A cassette tape belonging to the victim was found in the car along with a crow bar, two pairs of pliers, and two screwdrivers. In the trunk was the stolen car stereo. In distinguishing the *Gaspar D.* case from *Paulsen* and *Poindexter*, the court stated that the vehicle was used to travel to the burglary scene, was used as a place from which to commit the crime, and was used to depart the scene after the burglary. (*In re Gaspar D., supra,* 22 Cal.App.4th at p. 170.) Further, the court held that one purpose of the suspension legislation was to deter the use of motor vehicles in criminal endeavors. Moreover, aside from the use of the vehicle for transportation to and away from the chosen crime scene, there was use of the vehicle to conceal the fruits of the crime in the trunk of the vehicle. (*Ibid.*)

Factually, the only difference between *Gaspar D.* and the case before us now is that the defendant here was scared off before he actually placed the radio that he had already removed from the Camaro into his own vehicle. When he was discovered in a parking lot adjacent to the car dealership, the tools he used to remove the radio were found in his truck. Defendant admitted that he had removed the radio and, more importantly, he admitted that he "saw the radio—wanted it for himself and went back to get it that night."

Unlike *Poindexter*, defendant didn't just happen upon the Camaro and decide to take the radio. And unlike *Paulsen*, defendant did not use his truck in an elaborate scheme to transport and store stolen merchandise. According to the probation report, after seeing the radio earlier in the day, defendant formed the intent to come back later in his truck, under the cover of darkness, and remove the radio for himself. Like the defendant in *Gaspar D.*, he used the vehicle to transport himself to and away from the crime scene, and had he not been scared off by seeing the sheriff's car drive by, he would have transported the radio away from the crime scene in his truck. In accordance with *Gaspar D.*, we find that defendant used his vehicle for the purpose of committing the crime, and that the vehicle was instrumental, under these facts, in the commission of the crime, and that there was a sufficiently strong nexus between the vehicle use and the crime to justify the application of Vehicle Code section 13350.

*The Fourth Amendment Waiver Was a Proper Condition of Probation**

. . . . . . . . . . . . . . . . . . . . . . . . .

---

*See footnote, *ante,* page 1233.

The judgment is affirmed.

Dabney J., and McDaniel J.,* concurred.

---

*Retired Associate Justice of the Court of Appeal, Fourth District, senior judge status (Gov. Code, § 75028.1), sitting under assignment by the Chairperson of the Judicial Council.