Filed 6/22/21  P. v. Wilson CA6
# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H046730 |
| Plaintiff and Respondent, | (Santa Clara County Super. Ct. No. C1648876) |
| v. | |
| EXRILL DARILE WILSON, | |
| Defendant and Appellant. | |

In a negotiated disposition, defendant Exrill Darile Wilson pleaded no contest to several counts of burglary of a vehicle and was sentenced to two years in state prison.  At sentencing, the trial court also ordered, pursuant to Vehicle Code section 13350, that Wilson's convictions be reported to the California Department of Motor Vehicles (DMV) for revocation of his driving privilege.

On appeal, Wilson argues the trial court erred in directing that his convictions be reported to the DMV because there was no factual basis for that order.  On our own motion, we ordered the record augmented to include the transcripts from the preliminary hearing.  We also requested supplemental briefing from the parties, once those transcripts were filed, to address the following question:  "May the sentencing judge, who also presided over the preliminary hearing in this case, rely on the testimony and other evidence presented at the preliminary hearing to inform her sentencing choices, including the decision to notify the California Department of Motor Vehicles of defendant's convictions pursuant to Vehicle Code section 13350?"

In his supplemental brief, Wilson argued that revoking a driver's license is a punishment and, under *Apprendi v. New Jersey* (2000) 530 U.S. 466, 490 (*Apprendi*), a punishment may only be imposed if the facts supporting it were proved beyond a reasonable doubt. In his view, testimony from the preliminary hearing, at which the magistrate need only find that probable cause exists to hold a defendant to answer, is insufficient to support this aspect of his sentence.

We disagree and will affirm the judgment.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. *Procedural Background*

On May 24, 2018, the Santa Clara County District Attorney filed a third amended information charging Wilson with participation in a criminal street gang (Pen. Code, § 186.22, subd. (a); count 1)[1] and three counts of burglary of a vehicle (§§ 459, 460, subd. (b); counts 2-4). The information further alleged that the burglaries were committed for the benefit of a criminal street gang (§ 186.22, subd. (b)(1)(A)) and that Wilson had a prison prior conviction (§ 667.5, subd. (b)).

Pursuant to a negotiated disposition, Wilson pleaded no contest to counts 2, 3, and 4 in exchange for an indicated sentence of 24 months plus dismissal of count 1 and the gang enhancements. At the December 21, 2018 sentencing hearing, the trial court imposed a sentence of 24 months in prison, deemed served with his 732 days of credits (366 days of custody credits plus 366 days of conduct credits pursuant to section 4019). The trial court also imposed various fines, fees, and assessments, none of which are at issue in this appeal. Finally, the trial court, over defense objection, stated that it would report Wilson's convictions to the DMV for revocation of his driving privilege pursuant to Vehicle Code section 13350.

Wilson timely appealed.

---

[1] Unspecified statutory references are to the Penal Code.

### B. Factual Background[2]

#### 1. Count 2

On April 30, 2015, Sherry L. parked her Volkswagen in the parking lot of a restaurant on El Camino Real in Palo Alto. Sometime later, Sherry L. returned to her car and noticed that one of the rear windows had been broken. Sherry L. did not believe anything had been taken from her vehicle.

A witness, John S., was walking his dog near the restaurant that night and noticed two men walking around with flashlights in the parking lot. John S. thought this was suspicious, so he called 911 and provided the license plate number of a vehicle associated with the two men. Palo Alto Police Officer Chris Correia responded to the scene and spoke with John S. who described one of the two men he had seen in the parking lot as a "heavyset male."

#### 2. Count 3

On April 30, 2015, Alexandra O. was sitting in her car in the parking lot of a restaurant on El Camino Real in Palo Alto, waiting for her husband. She saw a silver BMW SUV pull into the parking lot and circle around a couple of times. Two men got out of the vehicle and started looking into cars in the parking lot. One of the men was a "skinny black male . . . with a black hoodie" and the other was a "heavy black male wearing a white T-shirt." The thinner man had a flashlight and, after he said something to the heavier man, the heavier man went back to the BMW. Alexandra O. saw the skinny man run back to the BMW carrying a black bag. He climbed in and the BMW drove away. Alexandra O. subsequently identified Wilson in a photo lineup as the "heavier-set man" in the BMW that night.

Palo Alto Police Officer Brad Young responded to the restaurant parking lot and spoke to Q.L. and W.F. who reported that their 2014 Dodge Grand Caravan had been

---

[2] Because Wilson pleaded no contest prior to trial, we derive the facts from the preliminary hearing transcript.

burglarized that evening. Young observed that the rear passenger window of the vehicle had been broken and Q.L. reported that a black backpack containing a computer, a cell phone, an iPad Mini and "other important documents" had been taken from inside. W.F. said that his black backpack which also contained a computer and documents had been taken as well. Police recovered two bags containing Q.L.'s and W.F.'s identification near the intersection of "Margarita and Orinda."

### 3. *Count 4*

On May 7, 2015, at around 9:00 a.m., Elaine M. parked her Toyota Sienna in the parking lot of a donut shop located in Mountain View. When she returned to her car, she noticed that one of the windows had been broken and two backpacks as well as a laptop computer had been stolen from inside. Mountain View Police Officer Andrew Wong viewed the donut shop's video surveillance footage of its parking lot and saw a black Volkswagen SUV park next to Elaine M.'s vehicle. A "heavyset black male . . . wearing a plain white T-shirt" got out of the driver's seat of the Volkswagen and looked in Elaine M.'s vehicle. A second black male, wearing a black knit cap and a light blue jacket, got out of the front passenger seat and went to look into another car. The heavyset man waved the second man over and then got back into the driver's seat of the Volkswagen. He left the driver's side door open, which Wong believed was to "shade or block" anyone else's view of the space between his car and Elaine M.'s car. The second man came over, broke the window on Elaine M.'s car, grabbed something out of it and ran back to the passenger seat of the Volkswagen. The Volkswagen then drove out of the parking lot.

Wong subsequently identified the passenger as Andrew Peacock based on surveillance video from a recent burglary in Menlo Park. In the video from the Menlo Park burglary, Wong could see that Peacock was the passenger in a black Volkswagen SUV and that a heavyset black male wearing a white T-shirt was the driver. Wong could also make out the license plate of the vehicle.

4

Later that day, Wilson was arrested by the California Highway Patrol (CHP) while driving a black Volkswagen SUV with the same license plate Wong had observed in the Menlo Park burglary video. Wong viewed the CHP dashcam video of the encounter and observed that Wilson was wearing a white T-shirt when he was arrested.

Wong later interviewed both Wilson and Peacock. Wilson admitted that he was arrested by the CHP in a Volkswagen SUV but denied being involved in the burglary at the donut shop. Peacock admitted he was the person shown in the Menlo Park burglary surveillance video and also said he was with Wilson that morning. However, Peacock said he could not remember if he and Wilson went to Mountain View that day.

## II.  DISCUSSION

Vehicle Code section 13350 provides that the DMV "immediately shall revoke the privilege of a person to drive a motor vehicle upon receipt of a duly certified abstract of the record of a court showing that the person has been convicted of . . . [¶] . . . [a] felony in the commission of which a motor vehicle is used . . . ." (Veh. Code, § 13350, subd. (a)(2).) Wilson contends that the trial court abused its discretion at the sentencing hearing when it found that a vehicle was used in the commission of the burglaries. In his supplemental letter brief, he argues that revoking his driver's license is an increased punishment which may only be imposed if the facts supporting it were proved beyond a reasonable doubt, citing *Apprendi supra*, 530 U.S. at page 490.

Consequently, before examining whether the trial court abused its discretion in reporting Wilson's convictions to the DMV pursuant to Vehicle Code section 13350, we must determine if the trial court's finding under that statute is subject to *Apprendi*. We conclude it is not.

### A. *Vehicle Code Section 13350 and* Apprendi

"Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." (*Apprendi*, *supra*, 530 U.S. at p. 490.) "Although the high

5

court has not specifically defined the word 'penalty' as used in *Apprendi* . . . , *Apprendi* itself involved a court-made factual finding that directly increased the length of the prison sentence for the crime to which the defendant had pled guilty." (*People v. Mosley* (2015) 60 Cal.4th 1044, 1056 (*Mosley*).)

In *Mosley*, the California Supreme Court held that residency restrictions imposed on registered sex offenders pursuant to Jessica's Law are not subject to *Apprendi* because, among other reasons, the "restrictions are not intended as punishment or retribution for the offense or offenses that led to their imposition." (*Mosley*, *supra*, 60 Cal.4th at p. 1062.) "Rather, their purpose is to serve a legitimate regulatory goal— reducing the opportunity for persons convicted of sexually related crimes, who are at large in the community but still deemed dangerous, to reoffend in the future. The restrictions may lead to significant disabilities in individual cases, but in the abstract, they do not so resemble traditional forms of punishment, and are not so clearly punitive in effect, as to override their regulatory aim." (*Ibid.*)

We conclude that like the sex offender residency restrictions in *Mosley*, the license revocation requirement of Vehicle Code section 13350 is not "intended as punishment or retribution for the offense or offenses that led to [its] imposition." (*Mosley*, *supra*, 60 Cal.4th at p. 1062.) Revoking the driver's license of someone who has used a motor vehicle to commit a felony "serve[s] a legitimate regulatory goal—reducing the opportunity for persons convicted of [qualifying] crimes, who are at large in the community . . . , to reoffend in the future." (*Ibid.*) We have no doubt that revocation of a driver's license "may lead to significant disabilities in individual cases, but in the abstract, [it] do[es] not so resemble traditional forms of punishment, and [is] not so clearly punitive in effect, as to override [its] regulatory aim." (*Ibid.*)

Further, while we have found no case directly addressing whether *Apprendi* is applicable to Vehicle Code section 13350, the California Supreme Court has explained that in most contexts, "the suspension or revocation of a driver's license generally has

been viewed as a sanction that is 'civil' rather than penal." (*Larsen v. Dep't of Motor Vehicles* (1995) 12 Cal.4th 278, 286, fn. 6.) Driving is "a privilege, not a right, and license revocation [is] a civil, not a criminal, sanction." (*People v. Linares* (2003) 105 Cal.App.4th 1196, 1199.)

For these reasons, we conclude that *Apprendi* is not applicable to the revocation provisions of Vehicle Code section 13350. The sentencing judge, who also presided over the preliminary hearing, was entitled to rely on her knowledge of the evidence presented at that hearing[3] to conclude that Wilson's conviction should be reported to the DMV under the statute.

## B. *License Revocation Pursuant to Vehicle Code Section 13350*

We now turn to whether there is sufficient evidence in the record to support the trial court's finding that Wilson used a motor vehicle in the commission of the auto burglaries that formed the basis of his no contest pleas. We conclude the finding is supported by sufficient evidence.

Vehicle Code section 13350 is appropriately invoked when the court finds "a nexus between the offense and the vehicle, not merely that a vehicle was incidental to the crime." (*People v. Poindexter* (1989) 210 Cal.App.3d 803, 808.) In *Poindexter*, the defendant pleaded no contest to grand theft from a person who was stopped on the side of the road, fixing his vehicle. (*Id.* at pp. 805-806.) A car driven by a codefendant, with the defendant as a passenger, stopped behind the victim's car. The codefendant asked the victim where he got the " 'bra' " on the front of his car. (*Id.* at p. 806.) The defendant and the codefendant took the bra from the victim's car and put it on the codefendant's car. They also demanded money from the victim. (*Ibid.*) On appeal, the court reversed

---

[3] The preliminary hearing transcript is a part of the record of conviction because of "the procedural protections afforded the defendant . . . includ[ing] the right to confront and cross-examine witnesses and the requirement those witnesses testify under oath, coupled with the accuracy afforded by the court reporter's verbatim reporting of the proceedings." (*People v. Reed* (1996) 13 Cal.4th 217, 223.)

the defendant's license revocation pursuant to Vehicle Code section 13350 concluding that, based on the record, "[t]he crime was not carried out by means of the car, nor was the car used as an instrumentality in the crime." (*Poindexter*, *supra*, at p. 808.)

Other courts have found a sufficient connection between a defendant's vehicle and his or her crime. In *People v. Paulsen* (1989) 217 Cal.App.3d 1420 (*Paulsen*), the defendant and a codefendant acquired musical and television equipment by fraudulent means and used a car and a U-Haul truck to carry that equipment away. The Court of Appeal, citing the preliminary hearing transcript,[4] distinguished *Poindexter* on its facts and affirmed the revocation of the defendant's license under Vehicle Code section 13350. (*Paulsen*, *supra*, at p. 1423.) The *Paulsen* court stated that "there was a strong nexus between the crimes perpetrated by defendant and the two motor vehicles in this case. Both the Isuzu car and the U-Haul truck were instrumental in carrying out the crimes charged. Their use was necessary in order to haul away the merchandise acquired in the fraudulent purchases. Defendant and her codefendant would not have been able to move the heavy musical and television equipment away from the stores where they obtained the merchandise without the use of such vehicles." (*Ibid.*)

In *People v. Gimenez* (1995) 36 Cal.App.4th 1233, a sheriff's deputy saw the defendant getting out of a Camaro in a car lot. By the time the deputy made a U-turn, the defendant was gone. The deputy checked the Camaro and saw that its radio had been removed and placed on the front seat. The defendant was found in a nearby parking lot along with tools which could be used to remove the radio. (*Id.* at p. 1235.) In a recorded interview, the defendant admitted he had seen the radio "earlier in the day," " 'wanted it for himself and went back to get it that night.' " (*Id.* at p. 1237.) Noting the defendant's daytime formulation of a plan to drive to the car lot that night and steal the radio, the *Gimenez* court distinguished *Poindexter* on its facts, noting that Poindexter formed the

_____

[4] Like Wilson, the defendant in *Paulsen* was convicted after entering into a plea agreement. (*Paulsen*, *supra*, 217 Cal.App.3d at p. 1421.)

intent to steal *after* happening upon the victim stopped along the side of the road. The court reasoned that by planning the theft in advance, driving to the location of the coveted radio, and retreating to the car when the theft was interrupted, Gimenez "used his vehicle for the purpose of committing the crime, and . . . the vehicle was instrumental . . . in the commission of the crime." (*Gimenez*, at p. 1237.) As a result, "there was a sufficiently strong nexus between the vehicle use and the crime to justify the application of Vehicle Code section 13350." (*Ibid.*)

This case is much more similar to *Paulsen* and *Gimenez* than it is to *Poindexter*. It is reasonable to infer from the evidence presented at the preliminary hearing that Wilson and his codefendants formed their intent to steal items from vehicles prior to driving to various parking lots along El Camino Real at night. Their approach was systematic and organized. Upon arrival at a given parking lot, they used flashlights to peer into the windows of parked vehicles, apparently looking for backpacks, laptops, and bags used to carry personal belongings and electronics of value. Having spotted such items, Wilson and his codefendants quickly smashed the windows of those specific vehicles and removed the personal possessions of the victims. Returning to their vehicle with the articles, Wilson and his codefendants drove to a different parking lot and repeated the process. The vehicle thus facilitated multiple thefts in a given night, also allowing Wilson and his given companion to quickly leave the scene of the thefts with less risk of apprehension by law enforcement.

And while Wilson may have been a passenger for some of the burglaries, the evidence also showed that Wilson was the driver of the Volkswagen involved in the May 7, 2015 burglary. Mountain View Police Officer Wong testified that after Wilson looked in a particular vehicle, he waved over his companion, got back into the driver's seat, and used the driver's door of the Volkswagen to obscure any bystander's view of the space between the Volkswagen and the car that was then burglarized. In short, Wilson used the car itself to facilitate the auto burglary. These facts demonstrate a sufficiently

9

strong nexus between the use of the car and the offenses.  The trial court did not abuse its discretion in reporting Wilson's vehicle burglary convictions to the DMV under Vehicle Code section 13350.

## III.    DISPOSITION

The judgment is affirmed.

_____

Greenwood, P.J.

WE CONCUR:

_____

Elia, J.

_____

Bamattre-Manoukian, J.

People v. Wilson
No. H046730