Filed 10/16/23  In re L.K. CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re L.K., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br> L.K.,<br><br>    Defendant and Appellant. | F085322<br><br>(Super. Ct. No. 22CEJ600289-1)<br><br><br>**ORDER MODIFYING OPINION AND DENYING REHEARING**<br>[No Change in Judgment] |

**THE COURT:**

It is ordered that the opinion filed herein on September 18, 2023, be modified as follows:

1.      On page 2, the second sentence in the Introduction is modified to read as follows:

> First, L.K. contends the juvenile court abused its discretion by not finding him suitable for DEJ, and second, that the court improperly ordered his driver's license revoked.

2.      On page 10, the title under roman numeral II is modified to read as follows:

> Revocation of L.K.'s Driver's License

3.      On pages 11 through 12, the fourth sentence of the paragraph that starts at the bottom of page 11 and continues to the top of page 12 is modified to read as follows:

And several appellate cases support the court's authority to impose such an order.

4.    On page 13, the first sentence of the last paragraph is modified to read as follows:

Here, the juvenile court ordered L.K.'s license revoked.

5.    On pages 13 through 14, the fifth sentence of the last paragraph on page 13 that continues to the top of page 14 is modified to read as follows:

Therefore, we hereby order the juvenile court to correct its records to reflect that L.K.'s driver's license is revoked under section 13350, subdivision (a)(1).

6.    On page 14, the first sentence under the Disposition is modified to read as follows:

We order the juvenile court to modify its records to reflect that L.K.'s driver's license is revoked under section 13350, subdivision (a)(1).

Except for the modifications set forth above, the opinion previously filed remains unchanged. There is no change in the judgment.

Appellant's petition for rehearing is denied.

SMITH, A.P.J.

WE CONCUR:

MEEHAN, J.

DESANTOS J.

Filed 9/18/23  In re L.K. CA5 (unmodified opinion)

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re L.K., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>L.K.,<br><br>    Defendant and Appellant. | F085322<br><br>(Super. Ct. No. 22CEJ600289-1)<br><br>**OPINION** |

### THE COURT[*]

APPEAL from an order of the Superior Court of Fresno County.  Virna L. Santos, Judge.

Sangeeta Sinha, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Eric L. Christoffersen and Michael A. Canzoneri, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]    Before Smith, Acting P. J., Meehan, J. and DeSantos, J.

**INTRODUCTION**

L.K., a minor, raises two issues on appeal following the juvenile court's order denying him deferred entry of judgment (DEJ). First, L.K. contends the juvenile court abused its discretion by not finding him suitable for DEJ, and second, that the court improperly ordered his driver's license revoked as a condition of his probation.

**BACKGROUND**

On November 27, 2021, at around 1:30 a.m., L.K. borrowed a vehicle that belonged to his girlfriend's mother for an errand. He did not have a valid driver's license. While driving on Highway 180 at approximately 75 miles per hour in the left lane he approached a vehicle that was stopped in the center median with the hazard lights on. When L.K. came upon the stopped vehicle, he saw a person sitting down in his lane. L.K. attempted to swerve but the left front of the vehicle hit the victim, Devan Elayda, and she died at the scene. L.K. fled the scene because he was scared. He drove the vehicle to his grandmother's house and told his girlfriend about what happened. The next day, L.K.'s aunt contacted the authorities and advised them that L.K. wanted to turn himself in.

L.K. gave a voluntary statement to an officer. He said he used his girlfriend's mother's vehicle to pick up something from a friend. He was driving home when he saw a vehicle stopped on the left side of the freeway and a person sitting in the middle of the lane ahead of him. He was unable to avoid hitting her. He drove away because he was scared. He did not have a driver's license.

The Fresno County District Attorney's Office filed a wardship petition under Welfare and Institutions Code section 602, subdivision (a) alleging one count of leaving the scene of an accident involving death or permanent serious injury (Veh. Code, § 20001, subd. (b)(2)).[1] L.K. admitted the offense for purposes of being assessed for DEJ

---

[1] All further undesignated statutory references are to the Vehicle Code.

eligibility.  The People filed a determination that L.K. was eligible for DEJ but recommended the court find L.K. unsuitable.  The juvenile court held a suitability hearing and found L.K. not suitable for DEJ.  The court adjudged L.K. a ward, placed him under the supervision of probation, ordered him to serve 60 days in the Juvenile Justice Campus and complete 80 hours of community service, ordered his license revoked, and ordered that he abide by other various terms and conditions of probation.

## DISCUSSION

### I.      The Juvenile Court Did Not Abuse Its Discretion in Determining L.K. Was Not Suitable for DEJ

L.K. argues that the juvenile court abused its discretion in focusing on his poor track record in finding that he would not benefit from DEJ and failed to consider all the relevant factors, specifically L.K.'s behavior after the incident.  The People disagree arguing the court did not abuse its discretion in finding L.K. not suitable for DEJ.  We agree with the People.

#### A.      Relevant Facts

In its report, the probation department recommended that the juvenile court find L.K. unsuitable for DEJ.  Citing L.K.'s poor attendance at school and low number of credits towards graduation, the report questioned whether L.K.'s mother could provide the proper support for L.K. to be successful.  The report recommended that L.K. should instead spend time in custody and receive individual counseling.

At the suitability hearing, the prosecutor asked the juvenile court to find L.K. not suitable for DEJ.  The prosecutor's first concern was L.K.'s ability to perform in the DEJ program with less supervision.  The prosecution noted L.K.'s mother's statement that L.K. is "generally compliant, does not stay out past curfew, and if he does, he will let her know.  Obviously, what the [c]ourt has before it is the case where the minor was not only out past curfew, but he was driving a vehicle that was not his own."  Second, the prosecutor had concerns about L.K.'s lack of truthfulness such as "why the minor was out

3.

at the time he was out" which was "truly never answered." L.K. said he was out eating or grabbing food, then said he had to go to a friend's house, and "evaded that issue when questioned by probation." As such, the prosecutor expressed "concerns about the truthfulness and how it relates to an overall picture of whether or not [L.K.] can be suitable for a program that's going to require him to follow a pretty—a more lax form of supervision compared to regular probation." The prosecutor also pointed out that L.K. was driving without a license and driving a vehicle not his own, and "ultimately an individual was struck and killed." "[T]he fact that he was out, unlicensed, and being an inexperienced driver could most definitely have contributed to and most likely did contribute to his striking her in this instance." The prosecutor argued, "It's unbelievable to me that he could have struck a human being. A witness mentioned that the human being went airborne—and not stop." Last, the prosecutor noted that L.K. had only nine credits towards graduation, which "[a]t his age, I think there is a picture that we don't have of what's going on. Maybe it's substance abuse. Maybe there is some reason that he didn't stop that he thought he could get in trouble for."

Defense counsel understood that "this is a very tragic and sensitive situation" but noted that the offense is DEJ eligible. Defense counsel asserted that L.K. "recognizes how serious this is," but accepted responsibility and is requesting DEJ. Counsel argued to the juvenile court that in order for it to find L.K. not suitable for DEJ, it had to "find that he would not benefit from the education, treatment, and rehabilitation of DEJ." It was further argued that DEJ "will provide the same amount of supervision for [L.K.], and really the only difference will be that he can't do custody time." "I know probation outlines other reasons they find he's not suitable. I think the biggest issue in this report was school. And I know that is very important to the [c]ourt. [L.K.] is pretty straightforward with me about school. He has not—he has not been going to school. He's pretty much just been doing his own thing." However, defense counsel noted L.K. "reenrolled back in Crescent View and started taking it seriously again." Counsel

4.

acknowledged there were several years where L.K. blew it at school but was told recently that at the rate L.K. is going he could graduate by next year. "[H]e's here now trying to make it right and trying to move forward. He has a different level of maturity now than he did back then, and I think that that shows that he is amenable to the rehabilitation and treatment of DEJ because it's about what he can do going forward." Counsel mentioned that no substance abuse was noted. He also acknowledged L.K. had gang tattoos but said L.K. plans to cover them up and is not associated with the gang anymore. He agreed L.K. could benefit from counseling, as suggested in the probation report, and stated that could be done through DEJ.

As for supervised home detention, defense counsel noted L.K. was complying. Defense counsel addressed L.K.'s failures to check in explaining L.K.'s first failure to check in was because he had just been released and the second failure to check in from September 29 through October 13, 2022, was when there was a death in the family. Counsel speculated that because L.K. had a court date in the second time period it caused him confusion. Also, counsel noted that although L.K. left the scene of a fatal accident, he turned himself in the next day and took responsibility. Finally, defense counsel argued that any consequences and rehabilitative measures that needed to be imposed could be accomplished through DEJ.

The prosecution responded that "the issue with DEJ is the familial support that the minor would have to help him accomplish DEJ and not set him up to fail." "[M]ost concerning is his mother's statements about him just not wanting to go to school," attendance issues, and failure to check in while on supervised release. The prosecutor argued that L.K. requires "a higher level of supervision than DEJ." DEJ provides a "much lower level of oversight than formal probation supervision." The prosecution also clarified that L.K. was dropped from McLane High School in 2021 and was then enrolled in Crescent View in 2021. The prosecution said that "[a]fter this event happened, he just

5.

stayed home."  L.K.'s mother had commented that L.K. "does not want to come to school."

The juvenile court responded as follows:  "Here's where the track record matters. The track record of being able to supervise yourself and have respect for what your duties are which are to go to school, to mind your parents, to abide by a curfew, you know, and stay away from improper influences.  And the track record that brings us here is that." "I'm going by your track record, the track record that brought you to that day when you were out in the middle of the night in somebody else's car—is what I have to go on to see if you can be trusted with less supervision.  I find that that track record is poor.  I don't miscount any of the other things that your attorney has said, and we will take those into consideration for the next level, but the [c]ourt finds you are not suitable for [DEJ] for those reasons and those reasons only."

## B.    Standard of Review

An appellate court reviews a juvenile court's denial of DEJ for an abuse of discretion.  (*In re Sergio R.* (2003) 106 Cal.App.4th 597, 607 (*Sergio R.*).)  Judicial discretion is abused only if it results in an arbitrary or capricious disposition, or implies whimsical thinking, and "exceeds the bounds of reason, all of the circumstances being considered."  (*People v. Giminez* (1975) 14 Cal.3d 68, 72; *Denham v. Superior Court* (1970) 2 Cal.3d 557, 566.)

## C.    Applicable Law

The determination of whether to grant DEJ requires consideration of "two distinct essential elements of the deferred entry of judgment program," which are eligibility and suitability.  (*Sergio R.*, *supra*, 106 Cal.App.4th at p. 607, fn. 10; *In re C.W.* (2012) 208 Cal.App.4th 654, 659 [eligibility and suitability are two distinct essential elements of the DEJ program].)

Once "a determination is made that a minor is eligible for DEJ, there must also be a determination that he is *suitable* for DEJ."  (*In re Usef S.* (2008) 160 Cal.App.4th 276,

6.

283; *Sergio R.*, *supra*, 106 Cal.App.4th at p. 605 [court has discretion to grant DEJ after determination of eligibility]; *In re C.W.*, *supra*, 208 Cal.App.4th at p. 660 ["Once the threshold determination of eligibility is made, the juvenile trial court has the ultimate discretion to rule on the minor's suitability for DEJ."]; Welf. & Inst. Code, § 791, subd. (b).) "The court may grant DEJ to the minor summarily under appropriate circumstances [citation], and if not must conduct a hearing at which 'the court *shall* consider the declaration of the prosecuting attorney, any report and recommendations from the probation department, and any other relevant material provided by the child or other interested parties.' " (*In re Luis B.* (2006) 142 Cal.App.4th 1117, 1123.) "When directed by the court, the probation department shall make an investigation and take into consideration the defendant's age, maturity, educational background, family relationships, demonstrable motivation, treatment history, if any, and other mitigating and aggravating factors in determining whether the minor is a person who would be benefited by education, treatment, or rehabilitation. The probation department shall also determine which programs would accept the minor." (Welf. & Inst. Code, § 791, subd. (b); see Cal. Rules of Court, former rule 1495(d).) While the probation department reports its findings and recommendations to the court, the court is not bound by these recommendations and is charged with making the final independent determination of suitability. (*Martha C. v. Superior Court* (2003) 108 Cal.App.4th 556, 561; *In re Robert H.* (2002) 96 Cal.App.4th 1317, 1329.)

### D.    Analysis

L.K. claims that "the juvenile court abused its discretion in finding that [he] would not benefit from 'education, treatment, and rehabilitation' " of DEJ. L.K. understands that the court considered his "poor 'track record' " but claims the court failed to consider that he addressed many of the court's concerns in the one-year period between the incident and the suitability hearing. As such, L.K. argues that the court's decision finding him not suitable for DEJ is not supported by substantial evidence. The People disagree

stating that the court "reasonably decided [L.K.] was ineligible for DEJ based on his lack of structure within his home, as evidenced by his failure to attend school regularly, his uncertain gang activities, and his apparent inability to comply with probation monitoring successfully while his case was pending." We conclude the court did not abuse its discretion in denying DEJ.

In evaluating whether a minor should be granted DEJ, "the court makes an independent determination after consideration of the 'suitability' factors specified in rule [5.800(d)(3)] and section 791, subdivision (b), with the exercise of discretion based upon the standard of whether the minor will derive benefit from 'education, treatment, and rehabilitation' rather than a more restrictive commitment." (*Sergio*, *supra*, 106 Cal.App.4th at p. 607; Welf. & Inst. Code, § 791, subd. (b); Cal. Rules of Court, rule 5.800(d)(3) [former rule 1495(b)(2), (f)].) The factors set forth in Welfare & Institutions Code section 791, subdivision (b) are: "the [minor's] age, maturity, educational background, family relationships, demonstrable motivation, treatment history, if any, and other mitigating and aggravating factors .…" In *Sergio R.*, the minor admitted to possession of methamphetamine and first degree burglary and although it was determined that he met the statutory eligibility criteria for DEJ, the juvenile court found the minor was not an appropriate candidate. (*Sergio R*., at pp. 600–602.) The appellate court held that even though the minor's youth and lack of a prior record militated in favor of DEJ, his history as a gang member and drug abuser, his participation with other gang members in a residential burglary, the fact that he no longer attended school, and that his mother said he had become unmanageable supported the trial court's decision he was not a suitable candidate for DEJ. (*Id*. at p. 608.)

Here as well, while L.K.'s youth and lack of prior record weigh in favor of DEJ, there are several other factors that support the juvenile court's decision that he was not suitable for DEJ. It is not disputed that L.K. had a poor record of attending school prior to the incident. He was expelled from McLane in 2021 and was then enrolled in Crescent

8.

View in 2021.  According to their records, L.K. had only earned nine credits, which showed he was behind in school.  At the hearing, the prosecutor stated that even after the incident, L.K.'s mother indicated L.K. did not want to go to school and was not in school at the time.  During the time L.K.'s attendance at school was poor, the school contacted the minor's mother several times a week on a weekly basis for a year regarding his attendance, but L.K.'s mother was unable to correct his behavior.  Such evidence supports the court's belief that L.K. does not have the structure and support he would need at home to be a suitable candidate for DEJ.

Additional evidence further supports the juvenile court's finding that the minor could not "be trusted with less supervision."  Although L.K. and his mother maintain that he has a 9:00 p.m. curfew, on the night of the incident the minor was out driving a vehicle that did not belong to him, without a driver's license, in the middle of the night.  The minor also had prior contacts with law enforcement regarding serious matters before this incident and some level of gang affiliation evidenced by his two gang tattoos and admitted membership in the "Asian Boyz" when booked into custody, even though he stated later he was not associated with the gang.  And L.K.'s explanation for why he was out driving in the middle of the night was unclear and inconsistent, implying a lack of truthfulness.

Contrary to L.K.'s assertion, the juvenile court did consider L.K.'s improved behaviors after the incident.  The record shows the court was aware L.K. was enrolled back in school, that he was regularly attending and that he complied with the terms of supervised release, as these facts were brought up at the hearing.  The court explained it did not discount any of defense counsel's points.  However, other factors were of greater concern to the court and it denied DEJ based on L.K.'s poor "track record of being able to supervise [himself] and have respect for what [his] duties are which are to go to school, to mind [his] parents, to abide by a curfew … and stay away from improper influences."

9.

We note L.K. omits crucial language when he argues "the juvenile court abused its discretion in finding that minor would not benefit from 'education, treatment, and rehabilitation.' " Instead, the standard is "whether the minor will derive benefit from 'education, treatment, and rehabilitation' rather than a more restrictive commitment." (*Martha C. v. Superior Court*, *supra*, 108 Cal.App.4th at p. 562, italics omitted.) We conclude the court conducted a proper consideration and weighing of the factors in determining the minor would benefit from a more restrictive commitment.

Upon review of the record, substantial evidence supports the juvenile court's determination that L.K. was not a suitable candidate for DEJ, and required more formal, restrictive measures. (See *Sergio*, *supra*, 106 Cal.App.4th at p. 608.) Therefore, we conclude the juvenile court did not abuse its discretion in denying DEJ.

## II.     Revocation of L.K.'s Driver's License as a Condition of Probation

L.K. contends that the juvenile court erred when it revoked his driving privilege under section 15308 because he had not been convicted of three or more serious traffic violations in the past three years as required under this section. The People agree that the court relied upon the incorrect Vehicle Code section and that his license should have been revoked under section 13350, subdivision (a)(1). We agree that L.K.'s license should have been ordered revoked under section 13350, subdivision (a)(1) and order the juvenile court to correct its records.

### A.     Relevant Facts

As a condition of wardship, the court ordered that "[t]he minor's driving privilege shall be revoked pursuant to … section 15308." The minute order from the hearing indicates the revocation was ordered pursuant to section 15350, subdivision (a).

### B.     Standard of Review

A juvenile court's conclusions regarding the applicability of a penalty statute is subject to de novo review. (*In re S.J.* (2020) 50 Cal.App.5th 885, 889.)

## C.     Relevant Law

Section 15308 requires the termination of the privilege to operate a commercial motor vehicle for 120 days if a driver is "convicted of a serious traffic violation" and the offense occurred within "three years of two or more separate offenses of serious traffic violations that resulted in convictions."  (§ 15308, subd. (a).)

Section 13350, subdivision (a) provides:  "The department immediately shall revoke the privilege of a person to drive a motor vehicle upon receipt of a duly certified abstract of the record of a court showing that the person has been convicted of any of the following crimes or offenses:  [¶] (1) Failure of the driver of a vehicle involved in an accident resulting in injury or death to a person to stop or otherwise comply with [s]ection 20001."

## D.     Analysis

L.K. argues that the juvenile court erred when it revoked his driving privilege under section 15308, subdivision (a) because he does not have three "convictions" as required.  L.K. points out the court's minute order indicates the revocation was ordered pursuant to section 15350, subdivision (a) instead, but that this section does not exist. L.K. acknowledges "it is possible the juvenile court meant to refer to … section 13350." Regardless, L.K. contends the revocation must be stricken arguing a juvenile adjudication is not a "conviction."  The People agree that section 13350 is the operative statute that the court must have been referring to and contend that L.K.'s adjudication does qualify as a "conviction" for purposes of this statute.

Initially, we clarify that a conviction for the purpose of suspension or revocation of licenses "includes a finding by a judge of a juvenile court." (§ 13105; *In re Colleen S.* (2004) 115 Cal.App.4th 471, 473, fn. 2.)  Therefore, the juvenile court's true finding here qualifies as a "conviction" for purposes of license revocation under the Vehicle Code.

"Courts have repeatedly noted the difference between the [Department of Motor Vehicles (DMV)]'s power to impose an administrative suspension and the power of the

trial courts to impose a penal sanction." (*Brierton v. Department of Motor Vehicles* (2006) 140 Cal.App.4th 427, 436; see *Larsen v. Department of Motor Vehicles* (1995) 12 Cal.4th 278, 286, fn. 6 [citing multiple cases in which the DMV's suspension of license is a sanction that is civil and not penal].) Both the court in which a person is convicted of a driving offense and the DMV have statutory powers with respect to suspension or revocation of the operator's license of the person convicted. "[T]he legislative scheme 'contemplate[s] two processes—one involving court proceedings and criminal in nature, the other involving administrative proceedings and civil in nature; and … these processes are, for the most part, intended to operate independently of each other and to provide for different dispositions.' " (*Brierton*, at p. 436; *McDaniel v. Department of Motor Vehicles* (1994) 22 Cal.App.4th 76, 80; *Robertson v. Department of Motor Vehicles* (1992) 7 Cal.App.4th 938, 947.) And several appellate cases support the court's authority to impose such an order as a condition of probation. (See *In re Gaspar D.* (1994) 22 Cal.App.4th 166, 170 [affirmed trial court's order suspending driver's license pursuant to section 13350]; *People v. Paulsen* (1989) 217 Cal.App.3d 1420, 1423 ["trial court did not err in ordering defendant to surrender her driver's license pursuant to section 13350"].) Therefore, the juvenile court had the authority to order L.K.'s license revoked.

However, we agree with L.K. that the juvenile court erred when it revoked his license under section 15308. L.K. does not meet the requirements under section 15308, subdivision (a) since his current offense did not occur within "three years of two or more separate offenses of serious traffic violations that resulted in convictions" as is required under the statute. Therefore, his current offense does not fall within the provisions of this section. We further agree with L.K. that section 15350, as written in the court's minute order, does not exist.

We next consider the suggestion by both parties that the juvenile court meant to revoke L.K.'s license under section 13350. Under this section, "[t]he department immediately shall revoke the privilege of a person to drive a motor vehicle upon receipt

12.

of a duly certified abstract of the record of a court showing that the person has been convicted of any of the following crimes or offenses:  [¶] (1) Failure of the driver of a vehicle involved in an accident resulting in injury or death to a person to stop or otherwise comply with [s]ection 20001." (§ 13350, subd. (a).)  It is clear that L.K.'s offense falls within the language of this statute requiring that his license be revoked.

" '[A] court has the inherent power to correct clerical errors in its records so as to make these records reflect the true facts.  [Citations.]  The power exists independently of statute and may be exercised in criminal as well as in civil cases.…  The court may correct such errors on its own motion or upon the application of the parties.' " (*People v. Mitchell* (2001) 26 Cal.4th 181, 185; *In re Candelario* (1970) 3 Cal.3d 702, 705.) "Clerical error, however, is to be distinguished from judicial error which cannot be corrected by amendment.  The distinction between clerical error and judicial error is 'whether the error was made in rendering the judgment, or in recording the judgment rendered.' " (*Candelario*, at p. 730; *Conservatorship of Tobias* (1989) 208 Cal.App.3d 1031, 1034–1035.)  "An amendment that substantially modifies the original judgment or materially alters the rights of the parties, may not be made by the court under its authority to correct clerical error, therefore, unless the record clearly demonstrates that the error was not the result of the exercise of judicial discretion." (*Candelario*, at p. 730; *Conservatorship of Tobias*, at pp. 1034–1035; *Morgan v. State Bd. of Equalization* (1949) 89 Cal.App.2d 674, 682; see *Bastajian v. Brown* (1941) 19 Cal.2d 209, 214–215.)

Here, the juvenile court ordered L.K.'s license revoked as a condition of probation.  The error here is not regarding the court's exercise of judicial discretion in ordering the license revoked, but that the court ordered the revocation under the wrong Vehicle Code section.  Any order by this court amending the juvenile court's order to reflect the correct Vehicle Code section would not alter or modify the court's judgment.  As such, the error is clerical and not judicial and within our power to correct at any time. (See *People v. Mitchell*, *supra*, 26 Cal.4th at p. 185.)  Therefore, we hereby order the

13.

juvenile court to correct its records to reflect that the condition of probation revoking L.K.'s driver's license is under section 13350, subdivision (a)(1).

## DISPOSITION

We order the juvenile court to modify its records to reflect that L.K.'s driver's license is revoked as a condition of probation under section 13350, subdivision (a)(1). In all other respects, we affirm the court's findings.

14.